## In re BENEVOLENT AND PROTECTIVE ORDER OF ELKS, BROOKLYN LODGE NO. 22.

### No. 24448.

District Court, E. D. New York.
June 6, 1933.

Herman S. Bachrach, of Brooklyn, N. Y. (Samuel S. Bisgyer, of Brooklyn, N. Y., of counsel), for receiver.

S. C. Duberstein, of Brooklyn, N. Y. (Max Schwartz, of Brooklyn, N. Y., of counsel), appearing specially for respondents objecting to jurisdiction of this court.

Allen S. Wrenn, of Brooklyn, N. Y. for Kings County Trust Co.

Frank G. Colgan, of Brooklyn, N. Y., for bankrupt.

BYERS, District Judge.

This is a motion by the receiver for an order directing the Kings County Trust Company to turn over to him a bank account in the name of "B. P. O. E. No. 22, Harry A. Hanbury trustee, Joseph H. Becker, Secretary in trust," in which account there is a balance of $25,377.01.

The motion is resisted by Messrs. Becker and Hanbury, who have filed affidavits in which it is related that they appear specially for the purpose of denying the jurisdiction of the Court to determine this motion. Each deponent alleges that the bank account in question was established pursuant to the adoption of a motion at a regular meeting of the bankrupt held January 13, 1933, of which the following is said to be a correct record:

"Excerpt from Minutes of January 13th, 1933.

"Brother George A. Colgan moved:

"That, in order to protect our members, that all proposition fees, initiation fees, life membership fees, Grand Lodge Assessments, and dues (April 1st, 1933) be held in escrow in trust pending settlement of financial conditions of the Lodge.

"Brother Samuel C. Duberstein moved to amend:

"That, such funds be held intact in escrow, in the name of Joseph H. Becker, Secretary, and Harry A. Hanbury, Chairman of the Board of Trustees, until April 1st, 1933, subject to disposition by the Lodge, and any court that may pass upon it.

"Amendment accepted by Brother George A. Colgan as part of the original motion.

"I certify foregoing to be correct.
                    "Joseph H. Becker Secretary"

The affidavits continue that, at the regular session of the Lodge held January 20, 1933, when the minutes of the last meeting were presented for action, the foregoing was amended to change the word "until" appearing before "April 1st, 1933," to the word "from."

It is the obvious duty of the receiver to seek to take possession of all of the bankrupt's property and, if this bank account is such, the motion should be granted.

It is difficult to assign to the above action of the meeting its precise legal status, because it does not appear from anything now on file whether the meeting of January 13, 1933, was properly constituted in accordance with the constitution of the national body of which the Brooklyn chapter is a member, or whether a quorum was present as required by Sec. 109 of that document.

Nor does it appear, from the terms of the motion as amended, whether the disposition of the funds in question was intended to operate as a transfer of funds under Sec. 18 of Article IX of the By-Laws of the bankrupt, which provides:

"Notice of Transfer of Funds. Sec. 18. No moneys deposited in any fund, unless otherwise provided by By-Law, shall be transferred to any other fund of the Lodge, except upon a two-thirds vote after notice to the membership."

The By-Laws seem to provide for the following funds:

Life membership fund.
Building and maintenance fund.
House operating fund.
General fund.
Committee fund.
Emergency relief fund.

The fees and dues apparently are controlled by Article XI of the By-Laws, which recites that the initiation fee is $50.00, and the regular annual dues are $25.00 payable semi-annually in advance "on the first day of April and October in each year * * *."

The governing body of the bankrupt seems to be the Board of Trustees, whose duties are recited in Section 7 of Article V. In 1928, an amendment to this section was adopted, referring to the powers of the Board in the following terms:

"It shall be empowered to transfer, as necessity require (s?), the moneys from one fund to another.

"It is vested with full power and authority to carry out or renew all Lodge financial obligations and also to re-finance any obligation for temporary periods of time it may borrow sums of money not to exceed $200,000 in the aggregate."

These and possibly other provisions would be involved in any attempt to appraise the true legal aspect of the action of the meeting referred to in the opposing affidavit.

It will be observed that the funds were to be held intact in escrow in the name of Joseph H. Becker, Secretary, and Harry A. Hanbury, Chairman of the Board of Trustees "subject to disposition by the Lodge, and any court that may pass upon it."

Mr. Becker is secretary of the bankrupt and, among his duties specified in the By-Laws, is "to receive all moneys due to the Lodge from any source whatever, paying the same to the Treasurer at the earliest practicable moment and taking his receipt therefor * * *." This would seem to embrace the duty to receive dues.

Mr. Hanbury, as the Chairman of the Board of Trustees, presided over the body which had control of the funds, investments and property of the Lodge, and the action in question therefore is open to the interpretation that these officials received the various sums which go to make up the balance now in the bank account, as representatives of the Lodge, and are therefore accountable to it for these funds.

The foregoing observation is offered because of the contention advanced in the opposing affidavits that these funds, which are said to have comprised dues and life membership fees, and were deposited in this particular account, never became the property of the bankrupt, but were a trust account of these gentlemen, opened by them "for the purpose of holding the dues received for the year of April 1, 1933, to April 1, 1934, pending the settlement of the financial condition of the Lodge"; that these funds were at all times in the possession of these gentlemen as Trustees for the members, although no form of receipt purporting to recite the terms of any such trust is annexed to the motion papers.

Perhaps, if a presumption were to be indulged, it would be to the effect that these gentlemen, one of whom was under bond to the Lodge, were acting on its behalf in receiving these moneys, and, as the dues became payable on April 1, 1933, more than a month before the voluntary petition in bankruptcy was filed, the duty devolved upon them on April 1, 1933, to put these moneys in one or more of the several funds authorized by the By-Laws, to the end that they might be applied to the uses and purposes of the Lodge therein provided.

The recital in the motion as quoted, that the funds are "subject to disposition by the Lodge," bears this out, because these moneys could not be subject to simultaneous disposition both by the members as individuals, and by the Lodge as a body corporate; the additional recital that the funds should be subject to disposition by "any court that may pass upon it" would be consistent with an anticipation that the affairs of the Lodge might inevitably come into court.

Much was said on the argument to the effect that the officers had induced the members to pay their dues, fees, etc., prior to April 1, 1933, upon the assurance that such payments would be returned if the Lodge should not prove to be able to work its way out of its financial difficulties, and that good faith and a fair protection of the officers who made these representations requires that this motion therefore should be denied.

The trouble with this suggestion is that the Court is bound by the record as it has been presented, and cannot in this connection accept informal representations, however sincere they are assumed to be. If the members who paid money into these funds have a right of recovery, that right should be preserved, but sufficient information is not at hand to justify a direction for the return of any part of the money represented by the bank account in question, in the disposition of this motion.

Accordingly, the motion will be granted, and the receiver will be directed to take this fund into his custody along with the other assets of the bankrupt, but to maintain it separate and apart from other moneys, in the trust company in which it is now deposited; and the said fund shall be subject to reclamation proceedings on the part of any member who may apply therefor, presently, or after the election of a trustee.

Settle order.